# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| U.S. NATIONAL BANK ASSOCIATION, | |
| Plaintiff, | |
| v. | Civil No. 16-1273 (SEC) |
| THE ESTATE OF LOURDES IVELISSE HERNANDEZ GALARZA, ET AL., | |
| Defendants. | |

# OPINION AND ORDER

Pending before the Court is Plaintiff U.S. National Bank Association's motion for service by publication. The motion is denied.

## I.  Factual and Procedural Background

Plaintiff U.S. National Bank Association filed this collection-of-monies and mortgage-foreclosure action against Lourdes Ivelisse Hernández, a resident of Bayamón, Puerto Rico. Approximately three months later, Plaintiff moved to substitute Hernández as the defendant for Hernández's estate pursuant to Fed. R. Civ. P. 25(a)(1). Plaintiff asserted that while attempting to complete service, it learned that Hernández had passed away. The motion included an affidavit by Plaintiff's process server, Joel Ronda.

As relevant here, the affidavit states that Ronda visited Hernández's property, which was empty, and that he talked with Ms. Martínez (presumably a neighbor) who said that she did not know Hernández. The affidavit does not specify the time and location where this conversation took place, nor does it explain why Ronda thought that Martínez might have information regarding Hernández's whereabouts. A few days later, the affidavit says, someone named Ms. Jimenez told Ronda that Hernández had recently

passed away. Ms. Jimenez, however, did not have information regarding Hernández's potential heirs. Ronda then asked for information regarding Hernandez's whereabouts in the U.S. Post Office, in a police station, and in the town hall of the Municipality of Bayamón to no avail. The affidavit also indicates that Ronda searched for Hernández on "social networks," but it does not say whether that search yielded any relevant information. The affidavit simply states: "see the results attached." The attachments are print screens of "google searches" and other websites, none of which are social networks. The google print screen, however, revealed that Hernández was a debtor in a bankruptcy case in Puerto Rico. See ECF No. 4-1, p. 3.

Judge Casellas first issued the following order denying Plaintiff's motion to substitute:

> The Court is not satisfied that Plaintiff has made sufficient efforts to ascertain Hernandez's death. To that effect, Ronda-Feliciano's unsworn statement under penalty of perjury merely states that someone named Ms. Jimenez told him that Hernandez passed away. The statement, however, fails to indicate who Ms. Jimenez is, or how does she has knowledge of Hernandez's death. Moreover, the same google search that Ronda-Feliciano performed reveals that Hernandez was [the] debtor in bankruptcy case No.12-06762. A review of the bankruptcy docket reveals that she was represented by counsel in that proceeding. Plaintiff could try to contact Hernandez's attorney who may be able to confirm Hernandez's death and whether or not she passed away with living heirs.[1]

---

[1] As noted, the affidavit does not explain who Ms. Jimenez is, nor does it give details on the nature of her relationship with Hernandez. It also fails to specify whether the process server spoke with Ms. Jimenez personally or by phone. The paragraph that antecedes the servers' recount of his conversation with Ms. Jimenez mentions that Hernandez worked in a school in Bayamón. Perhaps Ms. Jimenez was an employee there, but the affidavit does not answer this inquiry. See ECF No. 4-1, ¶¶ 8 & 9. Regardless, given that the process server knew where Hernández worked before her passing, he should have inquired further within the school employees as to the existence and whereabouts of Hernández's heirs. In so doing, the process server is expected to use his judgment in selecting the proper persons to ask. He should ask to speak, for example, with the employees closest to Hernández.

More than two weeks later, Plaintiff moved again to substitute Hernández and for issuance of summons to serve Hernández's unknown heirs. This time, Plaintiff attached a copy of Hernández's death certificate. The Court granted only the motion to substitute. Denying the request for issuance of summons, the Court explained that since Plaintiff was attempting to serve unknown defendants, it had to file a motion for service by publication pursuant to Puerto Rico Rule of Civil Procedure 4.6(c), P.R. Laws Ann. tit. 32, App. III R. 4.6(c). But the Court forewarned that to grant such a motion, Plaintiff would have to demonstrate reasonable efforts in identifying and locating the members of Hernández' estate. See ECF No. 8, citing Fuentes v. Tribunal de Distrito y Fuentes, Interventor, 73 D.P.R. 959, 987 (1952) (explaining that when a lawsuit is brought against a succession—known in the common law as a decedent's estate—the plaintiff must include the names of each and every heir, or must justify the omission of this requirement). The Court once again suggested that Plaintiff should contact the attorney that represented Hernández in the bankruptcy case. Id.

Plaintiff then moved for reconsideration of the order denying the issuance of summons. Attached to the motion was a second affidavit from Ronda saying that he found a state court resolution containing the declaration of Hernández's heirs. The attached resolution, however, does not contain a declaration of Hernández's heirs. Indeed, the Resolution dated October 11, 2006 predates Hernández's death. Rather, the resolution contains the declaration of heirs of Juan Miranda—Hernández's late husband and father to Hernández's son, C.M.H. The state court resolution declares Hernández, minor S.M.S., and minor C.M.H. as Miranda's heirs.[2] There is no declaration of Hernández's heirs on record.

---

[2] Ronda's second affidavit seems to suggest that, according to the state court resolution, C.M.H.'s last known address is the same as the property object of this action. ECF No. 9-1, p. 1. But that is not the case. And it could not be, since the resolution predates Hernández's purchase of the property as well.

Nevertheless, Plaintiff requested the issuance of summons as to minor C.M.H.[3] Uncertain of whether C.M.H. was Hernández's sole heir, Plaintiff also requested leave to name Jane Doe and John Doe as possible unknown members of Hernández's estate. The Court granted the motion.

Plaintiff then filed the motion for service by publication as to Defendants Jane Doe, John Doe, and minor C.M.H., currently pending before the Court. There, Plaintiff asserts that it was unable to personally serve Defendants "despite the attempts" that had been made to locate them. Plaintiff attached a third affidavit, this time by process server Juan García, explaining the "attempts" that he made to locate Defendants.

Process server García's efforts to locate minor C.M.H. were not much different from Ronda's. García visited the mortgaged property three times, and apparently was unable to find a single neighbor to ask regarding the whereabouts of minor C.M.H. He also talked to the same police agent and municipal employee that Ronda had spoken to some months before. García then attempted to obtain information at the Post Office, but for some unexplained reason he inquired with the Post Office in Caguas, instead of the one in Bayamón. Finally, García made a google search of minor C.M.H. See ECF No. 13-1. No other meaningful attempts to locate minor C.M.H appear on record.

## II. Applicable Law and Analysis

Federal Rule of Civil Procedure 4(e) allows a plaintiff to serve an individual within a judicial district of the United States by, *inter alia*, "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." The same is true when the individual to be served is a minor. See Fed. R. Civ. P. 4(g).

---

[3] Plaintiff never pointed out that C.M.H. is a minor. But the state court resolution indicates that he was born in 1998, in which case he is under 21 years old—a minor under Puerto Rico law. See Art. 247 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 971.

Rule 4.6 of the Puerto Rico Rules of Civil Procedure allows for service by publication only in limited circumstances. As relevant here, service by publication is permitted in cases where the defendant is hiding, is unknown, or for whatever reason cannot be located despite due diligence. P.R. Laws Ann. tit. 32, App. III R. 4.6.[4] To obtain such a remedy, the plaintiff must show, through an affidavit, "vigorous steps and honest effort in attempting to personally serve the defendant." Pagan v. Rivera Burgos, 13 P.R. Offic. Trans. 969, 975 (1983). "[M]ere generalities or hearsay evidence" will not suffice. Senior Loiza Corp. v. Vento Dev. Corp., 760 F.2d 20, 24 (1st Cir. 1985) (construing Mundo v. Fuster, 87 D.P.R. 363, 371–72 (1963)). Rather, the affidavit "must state specific probative facts showing that due diligence has been employed to locate defendants." Id. The degree of diligence required will depend on the particular circumstances of each case, taking into account all of the plaintiff's reasonably available resources to locate the defendants. See Lanzó Llanos v. Banco de la Vivienda, 133 D.P.R. 507, 515 (1993). "The Puerto Rico Supreme Court insists upon strict compliance with the[se] requirements," Culebra Conservation & Dev. Auth. v. Wit Power II, 108 F.R.D. 349, 355 (D.P.R. 1985), because "service by publication permits a plaintiff to proceed to judgment with nothing more than a form of notice to defendant—publication—that is quite likely to go unobserved." Senior Loiza Corp., 760 F.2d at 24.

Here, Plaintiff has not shown that it engaged in "vigorous steps and honest efforts" to serve Defendants personally. To start, Plaintiff apparently ignored the Court's suggestions that its efforts to locate Defendants should include contacting the attorney that represented Hernández (C.M.H.'s deceased mother) in her previous bankruptcy case. See ECF Nos. 6 & 8. And the rest of Plaintiff's efforts do not go beyond the

---

[4] It is unclear whether this Rule allows for serving a minor by publication. Regardless, Puerto Rico Rule of Civil Procedure 4.4 (b) provides that service is made "[u]pon a minor fourteen (14) years or older, by delivering a copy of the summons and of the complaint to him personally and to his father or mother with [parens patria] or to his guardian. In case the father, mother or guardian are outside Puerto Rico, any of the persons having the care of the minor or the person with whom he lives shall be served with process in their stead." P.R. Laws Ann. tit. 32, App. III R. 4.4 (b). Apparently, Plaintiff never realized that C.M.H. was a minor, since it did not include C.M.H.'s guardian in the proposed order for summons by publication.

generalities and stereotypical allegations that the Puerto Rico Supreme Court has deemed insufficient to warrant service by publication.

From the outset, the efforts expended in locating Defendants through the Municipality's town hall, police station, and Post Office will no longer do the trick. It is true that in the 1960s the Supreme Court said that it was good practice to inquire about the location of the defendants within the municipal government, the police, and the Post Office. <u>Mundo</u>, 87 D.P.R. at 372. But three decades later, the court acknowledged that "the technological advances in communications, the demographic changes in Puerto Rico, the movement of our citizens to large urban areas, the changes in cultural patterns," among other things, have rendered those inquiries useless for the most part. <u>Lanzó Llanos</u>, 133 D.P.R. at 514–15 (translation supplied). The court stressed that it is hardly useful to inquire with the local government or the Post Office of a municipality with a population of over 100,000 citizens. <u>Id.</u> Such is the case of Bayamón, which is a large municipality in the Puerto Rico metropolitan area. Accordingly, it is no surprise that both process servers, which allegedly inquired within those offices, came back empty-handed.

The efforts by Plaintiff's process servers in going to the mortgage property four times are also insufficient. During his only visit, Ronda asked only one person, Ms. Martínez, about Hernández's whereabouts. Ms. Martínez had no useful information. But Ronda's affidavit does not make clear who Ms. Martínez is, nor does it explain why he thought that she would have any knowledge regarding the late Hernández or her heirs. It does not even say whether Ms. Martínez lives in the same neighborhood as the mortgaged property. Indeed, her address was not included in the affidavit. And in this context, the Puerto Rico Supreme Court has said that including the addresses of the people with whom a plaintiff investigates is of "incalculable value" to prevent fraud. <u>Mundo</u>, 87 D.P.R. at 372.

Process server García fared no better. He visited the property three times, and yet his affidavit does not say whether he inquired within the neighborhood regarding the existence or location of Hernández's heirs. To be sure, he says in his affidavit that the last time he visited the property "no neighbors were in the area to asked [sic] information about defendants." ECF No. 13-1, ¶ 9. But the affidavit is not specific as to the attempts he made to contact the neighbors. It does not state whether García knocked on the doors of nearby properties. If he did, he did not include the physical addresses of the properties in his affidavit. And the Court finds it very unlikely that there was nobody in the neighborhood the three times that García visited the property.

## III.    Conclusion

For the reasons stated, the Court finds that Plaintiff failed to demonstrate "vigorous steps and honest efforts" in locating minor C.M.H. and other potential unknown heirs. Plaintiff's motion for service by publication is thus denied. Plaintiff will have until March 9, 2018, to serve minor C.M.H. personally or to show the Court that it engaged in diligent efforts reasonably directed to locate him and other potential unknown heirs. Failure to do so will entail the dismissal of this action.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 2nd day of February, 2018.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
U.S. District Judge